# Petition of the Law and Order Society of Philadelphia and D. C. Gibboney.

*Liquor laws—Remonstrances—Mandamus—Practice, Q. S.*

A petition for a mandamus to compel the judges of the quarter sessions to hear and consider remonstrances against the granting of liquor licenses was founded on remonstrances against forty-two different persons scattered through twenty-two different wards of a city. The remonstrances were upon printed blanks, but the blank spaces calling for statements that the remonstrants were residents of the ward in which the licenses were applied for were not filled up. A number of the remonstrances were signed by the same persons though the places were in different wards. There was nothing to show that the remonstrants were citizens or residents of the commonwealth. *Held*, that the petition should be dismissed.

No. 303, miscellaneous docket No. 1.

Petition for mandamus.

On April 11, 1898, the following petition was filed in the Supreme Court, sitting in Philadelphia.

## To The Honorable, The Judges of The Supreme Court of the State of Pennsylvania.

The petition of the Law and Order Society of Philadelphia, (by D. C. Gibboney, secretary) and of D. C. Gibboney, a resident of the city of Philadelphia, respectfully represents :

That under and in pursuance of the provisions of an act of the general assembly of the commonwealth of Pennsylvania, approved May 13, 1887, P. L. 108, entitled " An Act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof " and the supplements thereto, Patrick Dougherty, Patrick Donohue, Lawrence McEvoy, and divers other persons have filed with the clerk of the court of quarter sessions of Philadelphia, petitions applying for a license to be granted to each of the said persons for the year commencing June 1, 1898, for the sale of such liquors at retail in quantities not exceeding one quart at the places set forth in each of the said petitions. (A list of such applicants and of the place applied for by each of them is hereto annexed, marked exhibit " A," and is prayed to be taken and considered as a part of this petition.)

That your petitioners in accordance with the provisions of the said act of assembly filed with the clerk of the court of quarter sessions of Philadelphia, separate remonstrances against the granting of each of said licenses to each of said applicants. (Copies of said remonstrances are hereto annexed, and marked exhibit "B," and is prayed to be taken and considered as a part of this petition.)

That at the time fixed by the said court of quarter sessions for the hearing of said applications and the persons making objections to said applications, to wit: on the twenty-ninth day of March, A. D. 1898, your petitioners appeared at the bar of the said court of quarter sessions prepared to offer the testimony of witnesses to prove the truth of the charges set forth and contained in said remonstrances, but the Honorable CRAIG BIDDLE and the Honorable MICHAEL ARNOLD, then sitting as judges of the said court of quarter sessions, would not hear and consider the said remonstrances, and would not allow petitioners to produce any evidence to sustain the charges set forth in the said remonstrances.

Your petitioners are advised and verily believe, and therefore allege and charge that the said refusal to hear and consider said remonstrances, and the refusal to allow such evidence to be produced is contrary to the express provisions of section 7 of said act of assembly, approved May 13, 1887, and the supplements thereto. . . .

Your petitioners being advised, and believing that they are without any other remedy for such refusal, therefore pray this honorable court to issue a writ of mandamus directed to the said Honorable CRAIG BIDDLE, and Honorable MICHAEL ARNOLD, judges of the court of quarter sessions of Philadelphia county, commanding them to hear and consider said remonstrances, and to allow to be offered evidence in support of the charges made in said remonstrances, and that the said applications shall not be granted until said remonstrances and said evidence shall have been heard and considered by said court.

The remonstrances marked exhibit "B" are as follows:

"IN THE COURT OF QUARTER SESSIONS IN THE COUNTY OF "PHILADELPHIA, No.          1898.

"In the Matter of the Petition of Patrick Donohue for a Retail Liquor License.

"To the Honorable thè Judges of said Court: The petition of the undersigned residents of the . . . . Ward of the City of Philadelphia respectfully represents:

"That they remonstrate against the application of Patrick Donohue for a Retail Liquor License for the premises No. 953 South 6th Street, in the 2d Ward of the City of Philadelphia, and assign the following reasons:

"The said place for which a license is asked is not necessary for the accommodation of the public.

"The said place for which a license is asked is not necessary for the entertainment of strangers or travelers.

"There are already         licensed saloons in said Ward, and these remonstrants respectfully submit that there is no necessity for any addition to the present number for the coming year.

"The said applicant is not a proper person to have a license in this that he has violated the law in selling or furnishing liquor to persons visibly affected by intoxicating drink.

"That he has sold or furnished beer or liquor in larger quantities than allowed by law.

"LAW AND ORDER SOCIETY OF PHILA.,

"D. C. GIBBONEY, Secretary.

"and D. C. GIBBONEY."

On April 18, 1898, the Supreme Court granted a rule to show cause, returnable April 23, 1898. On April 21, 1898, the following answer was filed:

The respondents, CRAIG BIDDLE and MICHAEL ARNOLD, in response to the rule to show cause, respectfully answer and say that:

1. They were duly assigned to hold the courts of oyer and terminer, quarter sessions of the peace and general jail delivery, of the county of Philadelphia, during the March session of said courts for the present year, 1898, and in accordance with a rule of the said courts the judges holding the criminal courts during the March sessions are assigned to hear and determine applications for licenses to sell liquor.

2. The March session, 1898, commenced on Monday, March 7, and continued for one month, each month being a term, as prescribed by the act of March 13, 1867. On said Monday, March 7,

1898, the court for hearing applications for licenses was convened, and the following order was made :

"It is, perhaps, well to say on the opening of the license court, that in the granting of tavern licenses, there will be no deviation from the system already established.

"Those to whom retail licenses were granted last year, or to whom licenses have been since transferred, against whom no specific remonstrances have been filed or objections made, will be presumed to be entitled to new licenses, if applying for the same place. Cases in which specific remonstrances are filed or objections made, or in which a person now holding a license applies for a new place, or a place now licensed is applied for by a new applicant, will be heard in their order.

"These cases will be called on Monday, March 21, 1898, in room No. 676, in the City Hall, Broad and Market streets, at 10 A. M. The applicants will be called in their order, whether of new or old applications.

"As to remonstrances, the court will not consider those of a merely formal character, nor where it is alleged that a crime has been committed, subjecting the offender upon conviction to fine and imprisonment. Proceedings in those cases must first be taken under the seventeenth section of the act of May 17, 1887, and the offender must be tried, as in all such cases under our constitution, by a jury.

"Where an offense is alleged to have been committed, for which no specific mode of procedure and punishment is prescribed by law, application may be made to revoke the license upon sufficient cause shown.

"An order will be made hereafter in regard to applications for wholesale licenses, giving due notice when they will be heard."

A day or two subsequently, a modification of the above order was made, by which it was ordered that new applications and cases of transfers would be heard first, and that remonstrances to existing licensees would be heard thereafter.

3. The first part of the above order is the same as has been made by the license court for several years, and relates to the questions of the fitness of the licensee and the necessity for the place licensed, which having already been shown to exist, is presumed to continue until otherwise shown.

That part of the order relating to remonstrances to existing

licenses is a repetition of a similar order made by these respondents when they held the license court in 1893, and is neither new nor surprising to those who make a business of filing remonstrances. It concerns the character of the proof which is required under the act of May 17, 1887, to inform the court of violations of that act, by securing a trial by jury, under the constitution, to persons charged with criminal offenses, and who may be deprived of their liberty and property on conviction.

4. In pursuance of the duty of these respondents they then opened and held two courts of oyer and terminer, quarter sessions of the peace and general jail delivery, of the county of Philadelphia, for two weeks, and disposed of the cases brought before them.

5. On Monday, March 21, 1898, these respondents opened the license court and proceeded to hear the applications for licenses.

| | |
|---|---:|
| The number of applications for new retail licenses was | 603 |
| The number of remonstrances thereto was | 346 |
| The number of applications for renewal of existing retail licenses was | 1,634 |
| The number of remonstrances thereto was | 61 |
| The number of applications for new wholesale licenses was | 70 |
| The number of remonstrances thereto was | 10 |
| The number of applications for renewal of existing wholesale licenses was | 479 |
| The number of remonstrances thereto was | 2 |

The new applications were heard in their order, all the applicants and remonstrances being heard, until Monday, March 28, when the hearing of new cases was completed, and an argument was heard on a number of remonstrances, stated to be 111 in number, against retail dealers who held shares of stock in brewing companies, and the right of a brewing company to have more than one brewery and license therefor.

Tuesday, March 29, was set for hearing remonstrances to existing licenses. On that day the list was called; several cases were heard, and also an argument against the granting of any licenses.

In all cases of remonstrances based on a violation of the act of 1887, these respondents offered to receive proof thereof according to the order made on March 7, of which due public notice had been given, and no one was deprived of an opportunity of producing such proof, but no proof was offered such as these respondents deemed satisfactory.

6. Having heard all the cases and completed the business before them, the respondents went into consultation on Wednesday, March 30, and sat thereafter from day to day until and including Wednesday, April 6, that is to say, six full days, when they agreed upon the grants and refusals of licenses, but postponed the announcement of them until a future day. The March term of the court expired on Saturday, April 2, and on Monday, April 4, 1898, two other judges of the courts of this county opened the criminal courts for the April term, and are now holding the same, while these respondents are engaged in holding the courts of common pleas of which they are judges.

7. And these respondents further state that even if they were disposed to deprive licensees, charged with crime, of their constitutional right of trial by jury, and sit as triers of criminal charges, it would be impossible to hear all the witnesses and counsel in such cases and decide the same before the time fixed for paying the license fees and the beginning of the license year. As before stated, the license court meets in the month of March. The license year begins on June 1, and payment of the license fee is required to be made within fifteen days after the application has been granted. Under the most hurried conduct of the hearings, having due regard to the rights of the accused to be heard by witnesses and counsel, it would be impossible to hear and decide all the charges of criminal violations of the law by licensees between the time fixed for the commencement of the hearing and the beginning of the license year, even were the judges disposed to set aside all other duty in the courts to which they are attached, and impede the delivery of the jail and the trial of a great number of causes in the criminal and other courts of this county.

9. And these respondents aver that it is not true that they " would not hear and consider the said remonstrances and would not allow petitioners to produce any evidence to sustain the

charges set forth in the said remonstrances" referred to in the petition filed in this case, but on the contrary they aver that they were willing to hear the proof as before stated in this answer, but none such was offered.

Finally, these respondents submit themselves to the order of your honorable Court in the premises.

*A. M. Burton* and *L. D. Vail*, for the petitioner.

*Richard C. Dale* and *John G. Johnson*, for the respondents.

PER CURIAM, April 25, 1898:

This petition is founded on remonstrances against different persons, forty-two in number, and scattered through twenty-two different wards. The remonstrances are all upon printed blanks calling, as the statute requires, for statements that the remonstrants are residents of the ward in which the license is applied for, but the blanks in this respect are not filled up. As a number of them are signed by the same person, though the places are in different wards, they have the appearance of not being genuine remonstrances by residents of the ward, but business ones by a professional informer. For all that appears the remonstrants may not be even citizens or residents of this commonwealth. The petition complains that the remonstrants were refused a hearing, but it does not show in any manner that they were entitled to one.

Such practice is too loose to be sustained.

Petition dismissed.