June 21, 1909.

————o————

## No. 4738.

### Court of Appeal, Parish of Orleans.

### MRS. MARY THOMPSON VS. JOSEPH H. COPLAND.

1. When a person engages his services to another to make collections of accounts for the benefit of his employer, and receives compensation on a commission basis or upon other certain conditions, the relationship of Master and Servant is established between his employer and himself in the meaning of the Civil Code, Article 163.

2. If a servant goes outside of his employment, acting with malice and causing damage, the master is not liable, but when a collector at the direction of his employer calls upon the latter's debtor, and, failing to collect money due by the debtor, forcibly enters the latter's premises and removes the household goods upon which the debt is due, and the employer, though notified of the wrongful act of his servant or agent, takes no steps to repair the wrong, but permits the property so forcibly removed and detained by his agent to be sold, he will be deemed to have ratified the acts of his agent and will be held liable for the damage resulting.

Appeal from the Civil District Court, Division "D."

Geo. J. Untereiner, for Plaintiff and Appellee.

E. M. Cahn, E. M. Robbert, for Defendant and Appellant.

ESTOPINAL, J. Plaintiff sued to recover of the defendant the sum of two thousand dollars, averring in her petition that during the month of January, 1907, she purchased from one W. A. Murphy certain articles of household furniture for the sum of one hundred and eight dollars on which she made a cash payment of $18.00. The balance was to be paid in in-

—403—

stallments of $2.50 weekly; that when she had paid a total of $48.00 on account of the purchase, Murphy, from whom she had purchased the furniture, went into the bankruptcy court and was adjudicated a bankrupt, whereupon by order or the referee in bankruptcy, all of the accounts due Murphy, including that of plaintiff, were sold at auction and adjudicated to Joseph H. Copeland, defendant herein.

Plaintiff then avers that after the purchase of said accounts, a collector representing the said Copeland called upon her to collect the weekly installments due, as well as those past due, and the said collector and others, agents of said Copeland, about April 10th, 1908, without her consent and over her protest, willfully and deliberately forced the doors of her premises and removed from said premises the articles of furniture which she purchased from said Murphy, and that said furniture is now and should be in the possession of said Copeland and is by him illegally detained.

Defendant filed an exception of vagueness and no cause of action. The contention of defendant in support of his exception is, that, taking the allegations of plaintiff's petition as true for the purpose of the exception, nowhere it is shown in her petition that the defendant, Joe H. Copeland, took any part in committing said alleged tort or approved of said trespass, nor is it shown that defendant was in any way connected with the alleged wrongful act of the collector, etc., etc., that if the alleged collector or unknown agents of the defendant committed a tort or other wrongful act toward the plaintiff, she, in order to show a cause of action against the defendant, must show, and her petition must allege, that said wrongful act by defendant's agents was done in the exercise of the functions in which they were employed.

The exception was properly overruled by the district judge.

It is not sacramental that plaintiff should allege in given and stereotyped language or phrases the averments which defendant claims are wanting in her petition. We agree with the learned counsel for plaintiff that the petition should contain allegations which go to connect the plaintiff with the acts of his agents, but as we have stated, it is not necessary that these should be in set terms. We deem the averment in the petition to the effect that "agents of Copeland (defendant) without her consent and over her protest, willfully and deliberately forced the

—404—

doors of her premises and removed from said premises the articles of furniture which she purchased from said Murphy, *and that said furniture is now and should be in the possession of said Copeland and is by him illegally detained,"* quite sufficient to connect Copeland with the acts of his alleged agents, since his detention of the property, the possession of which he secured through and by the acts of his agents, amounts to a ratification of their acts.

This case was tried before a jury which rendered a verdict in favor of the plaintiff for $300.00, and was approved by the judge who rendeerd a like judgment.

Questions of fact and the credibility of witnesses are involved. The trial judge and the jury were peculiarly enabled to properly pass upon these, and only a showing that a manifest injustice has been done could and would induce this court to disturb their finding.

The record shows these facts: That one Larsen, and one W. A. Murphy, the latter being the bankrupt furniture dealer whose accounts were purchased at auction sale by defendant, were collectors in the employ of defendant; that these two men called at plaintiff's home and sought to collect from her the money due on the furniture; that she endeavored to raise the money and at once called on one of her neighbors to secure funds with which to make a payment; that while she was away, Larson and Murphy entered her home and removed her furniture and carried it away. The defense set up by Copeland is two-fold: Substantially as follows: 1st. At the time of the alleged trespass by Larson and Murphy, I was no longer the owner of the claim or account against plaintiff, having sold it, together with others, about a month before, to Larson, who was acting, therefore, for his own account. Secondly. Should it be held that Copeland had not parted with and was still the owner of the account against plaintiff, then he is not liable because his alleged agents committed acts beyond the scope of their authority or the functions for which they were employed.

Taking up the first point made by defendant, that he had sold the account to Larsen and was not the owner thereof when Larsen committed the trespass, we shall dispose of it by pointing to the fact that Copeland had an opportunity before suit was filed when he called on plaintiff's attorney to then make clear and plain the position he occupied by exhibiting a

bill of sale to Larsen. Such a document exhibited then, at a time not suspicious, would have very probably diverted legal action by plaintiff in another direction, but instead of making a clear statement to plaintiff's attorney at the time, Copeland told the attorney that he (the attorney) would find out about the account and its sale when the suit was tried. Was it that the contract of sale had not yet been perfected? We can scarcely believe that Copeland was so sensitive of the sarcastic remarks, which he claims were made to him by plaintiff's counsel that he preferred to be dragged into court rather than exhibit documentary evidence which would prevent the institution of suit against him.

Thewritten instrument purporting to be the contract of sale by Copeland to Larsen is so inartistically drawn, possessing such lack of uniformity in the type, and so different in texture or color of ink, that one must view it with suspicion and conclude that it was the product of slow and anxious labor.

. Needless to say that the behavior of defendant before suit was filed in not exhibiting a bill of sale and thereby avoiding suit, and the peculiar connection of an alleged bill of sale subsequently produced on the trial below, not only makes the defense ineffective, but necessarily casts suspicion on every phase of defendant's case.

We now come to the second proposition involved in the case, to-wit: That if Larsen was a servant of Jos. H. Copeland, would the defendant be liable for the alleged trespass. Counsel for defendant at the outset questions whether Larsen who collected accounts on a commission basis for Copeland could be considered a servant of Copeland.

Our attention is directed to Article 163 of the Civil Code, every line of which seems to establish absolutely the relationship of master and servant between Copeland and Larsen. Counsel contends to the contrary. We are of opinion that the Article of the Code relied upon by counsel is intended to include in its provisions such employment as Larsen's.

Shea vs. Reems, 36 A. 967, is cited as an authority supporting the defendant's contention and showing the test of the relationship of master and servant to be ''the power of discharge for disobedience.'' Commenting on this opinion and applying it to the case at bar, learned counsel contends that since Larsen was' making collections for Copeland on a commis-

sion basis, the latter had no control over him to discharge him for any disobedience, and that the most he could have done was to *withdraw his accounts* from Larsen if they were not properly attended to.

Now what would the withdrawal of the accounts be if not a discharge from his employment. This is a distinction without a difference. Larsen was employed at this work for the benefit and advantage of Copeland and the presumption is that the acts which he performed in discharging the functions of his employment were within the scope of such employment, the burden of proof to negative such presumption being upon the defendant. The defendant has not met this burden. He relied too confidently on the alleged sale to Larsen.

Shortly after the forcible entry and removal of the property defendant was notified. He made no effort to have it returned or to make reparation of some sort to plaintiff. This constituted a complete ratification of the acts of Larsen and fixes. beyond question the responsibility and liability upon the defendant. Had there been no such ratification plaintiff would have been absolutely protected under decisions in 40 A. 92 and 43 A. 37.

Much more might be said touching the facts, but we see no necessity for further discussion of these, for, as before stated, the credibility of the witnesses is involved and we shall bow to the court and jury before whom the case was tried and whose judgment appears to be eminently proper.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be, and it is hereby affirmed, defendant to pay all costs.

June 21, 1909.

Rehearing refused June 29, 1909.